# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

MODA ASSURANCE CO.,

        Plaintiff,

  v.

NEW LIFE TREATMENT CENTER,

        Defendant.

Case No. 3:23-cv-00132-SLG

## ORDER RE DEFENDANT'S MOTION TO DISMISS OR TRANSFER TO CENTRAL DISTRICT OF CALIFORNIA AND PLAINTIFF'S MOTION TO AMEND COMPLAINT

Before the Court at Docket 12 is Defendant New Life Treatment Center's "Motion to Dismiss Complaint under Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3), and (b)(6); or in the alternative to transfer under 28 U.S.C. § 1404 to the Central District of California." Plaintiff Moda Assurance Co. responded in opposition at Docket 17, to which Defendant replied at Docket 23. Also before the Court is Plaintiff's Motion to Amend Complaint at Docket 18. Defendant responded in opposition at Docket 21, to which Plaintiff replied at Docket 24. Oral argument was not requested on either motion and was not necessary to the Court's determination.

## BACKGROUND

Moda Assurance Co. ("Moda") is a health insurance company and Alaska corporation with its principal place of business in Anchorage, Alaska.[1] It brings

---

[1] Docket 1 at ¶ 9.

this suit against New Life Treatment Center ("New Life"), a substance abuse treatment center and California company with its principal place of business in California.[2] Moda's complaint asserts that "New Life orchestrated a deceptive and unlawful scheme through which it defrauded Moda of approximately $3.3 million," and that "Moda has so far paid an estimated $550,000 in claims (of a total of $3.3 million in claims for which New Life has so far sought payment from Moda) for individuals whose health-insurance applications contained information that New Life falsified or caused to be falsified."[3] Moda contends that New Life's alleged scheme was propelled by an Alaska regulation, Title 3 of the Alaska Administrative Code ("AAC"), section 26.110(a), which "provides that private health care insurers must pay claims for health care services based on an amount that is equal to or greater than the 80th percentile of charges in a geographical area" (the "80th percentile rule").[4] Moda explains that "[t]he effect of Alaska's 80th percentile rule is that out-of-network providers like New Life receive a much higher payment from private health insurers like Moda than they would from (a) private insurers in states without such a rule; and (b) public insurers like Medicaid."[5] Thus, Moda contends

---

[2] Docket 1 at ¶ 10; Docket 12 at 14; Docket 12-1 at ¶ 3.

[3] Docket 1 at ¶¶ 1, 32.

[4] Docket 1 at ¶¶ 26-27.

[5] Docket 1 at ¶ 28.

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 2 of 19

Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 2 of 19

that "New Life or its employees or agents purposefully availed itself of the privilege of conducting business in Alaska by inducing Alaska residents to seek treatment for substance abuse at its treatment center."[6] In its initial complaint, Moda alleges six causes of action against New Life: (1) fraud/misrepresentation; (2) negligent misrepresentation; (3) violation of the Alaska Consumer Protection Act; (4) violation of the California Insurance Frauds Prevention Act; (5) violation of California's Unfair Competition Law; and (6) civil conspiracy.[7] Moda's initial complaint seeks compensatory damages, civil penalties, punitive damages, restitution, attorney fees, and pre- and post-judgment interest.[8]

New Life filed a Motion to Dismiss, asserting that Moda lacks standing; the Court lacks personal jurisdiction over New Life; the District of Alaska is not the appropriate venue; and that Moda fails to state a claim upon which relief can be granted.[9] Moda then filed a Motion to Amend Complaint and submitted a proposed amended complaint ("PAC") in which it asserts only three causes of action: (1) fraud/intentional misrepresentation under Alaska law; (2) negligent misrepresentation under Alaska law; and (3) civil conspiracy under Alaska law.[10]

---

[6] Docket 1 at ¶ 13.

[7] Docket 1 at ¶¶ 34-65.

[8] Docket 1 at 13-14.

[9] *See* Docket 12 at 3.

[10] Docket 18; Docket 18-1 at ¶¶ 60-77.

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 3 of 19

Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 3 of 19

In this order, the Court first addresses Moda's Motion to Amend Complaint, and for the reasons stated below, the Court grants Moda's Motion to Amend Complaint and denies New Life's Motion to Dismiss without prejudice to its renewal after Moda has filed a clean copy of its amended complaint.

## JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between Moda and New Life and because Moda alleges an amount in controversy exceeding $75,000.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 15(a), if 21 days have passed since a pleading was served or since a motion under Rule 12(b), (e), or (f) was served—whichever is earlier—then "a party may amend its pleading only with the opposing party's written consent or the court's leave." That rule also provides that courts should "freely give leave [to amend] when justice so requires"; the Ninth Circuit has held that "this policy is to be applied with extreme liberality."[11] "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the

---

[11] Fed. R. Civ. P. 15(a)(2); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (citation omitted).

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 4 of 19
Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 4 of 19

complaint. Futility alone can justify the denial of a motion to amend."[12] However, "[n]ot all of the factors merit equal weight"; in the Ninth Circuit, "it is the consideration of prejudice to the opposing party that carries the greatest weight."[13] And "[a]bsent prejudice, or a strong showing of any of the remaining . . . factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."[14]

## DISCUSSION

Moda filed its Motion to Amend Complaint more than 21 days after it filed its original complaint and after New Life's Motion to Dismiss was served.[15] Accordingly, given New Life's lack of consent, a court order permitting leave to amend is necessary for any amendment.[16] In its opposition to the motion, New Life maintains that the PAC still fails to establish standing, personal jurisdiction, and venue, and that it still fails to state viable claims for relief, such that Moda's motion to amend should be denied because allowing the proposed amendments would be futile.[17]

---

[12] *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (citations and internal quotation marks omitted).

[13] *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted).

[14] *Id.* (emphasis in original) (citation omitted).

[15] *See* Docket 1; Docket 12; Docket 18.

[16] *See* Docket 21; Fed. R. Civ. P. 15(a)(2).

[17] Docket 21 at 8.

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 5 of 19
Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 5 of 19

Moda has not previously amended its complaint, and the Court finds that there is no evidence of bad faith, undue delay, or prejudice to New Life if the Court permits Moda to file an amended complaint. Although New Life contends that "Moda's suit is merely a bad faith nuisance suit designed to harass New Life in the hopes of avoiding paying the legitimate claims of Moda insureds,"[18] New Life provides no factual basis for its assertion of bad faith.[19] Nor has there been any undue delay by Moda in seeking amendment: the case was initiated in June 2023, New Life filed its motion to dismiss in August 2023, and Moda filed its motion seeking to amend its complaint in October 2023.[20] New Life has not yet filed an answer to the complaint and it has not claimed that it would be prejudiced by amendment to the complaint.[21] Indeed, as Moda points out, the PAC removes three of the six original causes of action that Moda asserted.[22]

The only factor at issue is whether allowing Moda to amend its complaint would be futile. New Life asserts that permitting the PAC would be futile because Moda would still lack standing, personal jurisdiction over New Life would still be

---

[18] Docket 21 at 11.

[19] Apart from this conclusory statement, New Life provides no other explanation for why it believes Moda's suit is brought in bad faith.

[20] *See* Docket 1; Docket 12; Docket 18.

[21] *See generally* Docket 21.

[22] *See* Docket 18-1 at ¶¶ 60-77.

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 6 of 19
Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 6 of 19

lacking, venue in the District of Alaska would still be improper, and Moda would still fail to state a viable claim for which relief can be granted.[23] The Court addresses each issue in turn.

   I.   Standing

Standing requires a plaintiff to show (1) an injury in fact, meaning an "invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation; and (3) redressability, meaning that "the injury will likely be redressed by a favorable decision."[24] New Life contends that Moda has not alleged that it suffered an injury in fact because Moda paid "legitimate claims at a statutory rate" under Alaska law.[25] New Life asserts that, "[a]t best, Plaintiff's new theory alleges a harm to the government only."[26]

In its PAC, Moda alleges it paid over $650,000 in claims to New Life after New Life "falsified or caused to be falsified" income information on its recruits' applications to the federal health exchange, which resulted in New Life "enroll[ing]

---

[23] *See* Docket 21 at 2.

[24] *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

[25] Docket 21 at 11.

[26] Docket 21 at 12.

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 7 of 19

Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 7 of 19

or caus[ing] to enroll at least 25 . . . patients in Moda health plans."[27] Moda contends that, absent New Life's false income reporting, the patients that New Life recruited would have been eligible for Medicaid and would not have "enroll[ed] in an insurance plan like Moda's[] because doing so would be cost-prohibitive," because they would not have been eligible for premium subsidies.[28] Thus, Moda has adequately alleged an injury that is fairly traceable to New Life's alleged actions.[29] And Moda asserts that a favorable judicial decision in the form of compensatory damages "would redress the monetary injury that Moda suffered as a result of New Life's misrepresentations."[30] Accordingly, Moda's PAC adequately alleges the three requirements for standing.

## II. Personal Jurisdiction

New Life contends that the PAC fails to adequately allege facts to permit this Court to exercise personal jurisdiction over New Life in this case. Unless an applicable federal statute provides otherwise, personal jurisdiction is governed by

---

[27] *See* Docket 18-1 at ¶¶ 41-42, 58; Docket 24 at 11.

[28] *See* Docket 18-1 at ¶ 37; Docket 24 at 13-14.

[29] *See* Docket 24 at 13 ("Before New Life misrepresented its recruits' income, the recruits were not enrolled in Moda health plans and Moda bore no responsibility to pay claims on their behalf. It was only after New Life[] misrepresented its recruits' income—rendering them ineligible for Medicaid but eligible for premium subsidies that reduced the price of Moda's health plan to only a few dollars per month—that it became financially possible for its recruits to enroll in a Moda health plan." (citing Docket 18-1 at ¶¶ 6-7, 24, 31, 37-38)).

[30] Docket 24 at 15.

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 8 of 19
Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 8 of 19

the law of the state in which a district court sits.[31] Alaska's long-arm statute, Alaska Statute § 09.05.015, "authorizes Alaska's courts 'to assert jurisdiction to the maximum extent permitted by due process.'"[32] Due process, in turn, permits courts to exercise personal jurisdiction over nonresident defendants as long as the defendants "have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"[33]

"There are two categories of personal jurisdiction: (1) general jurisdiction and (2) specific jurisdiction."[34] Here, Moda alleges that this Court has specific personal jurisdiction over New Life for this particular controversy.[35] For a court to have specific personal jurisdiction over a defendant, "the *suit* must aris[e] out of or relat[e] to the defendant's contacts with the *forum*."[36] The Ninth Circuit has articulated a three-pronged test:

---

[31] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citations omitted).

[32] *Harper v. BioLife Energy Sys., Inc.*, 426 P.3d 1067, 1071 (Alaska 2018) (citations omitted).

[33] *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[34] *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018) (citation omitted).

[35] *See* Docket 1 at ¶ 13.

[36] *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (emphasis and alterations in original) (citations and internal quotation marks omitted).

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 9 of 19
Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 9 of 19

> (1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.[37]

The plaintiff bears the burden of establishing the first two prongs.[38] If it succeeds, the burden shifts to the defendant to "present a compelling case" that exercising jurisdiction would not be reasonable.[39]

The terms "purposefully availed" and "purposefully directed" are distinct concepts.[40] The "purposefully availed" analysis is usually applied to actions sounding in contract, while the "purposefully directed" analysis is usually applied to actions sounding in tort.[41] But there is no "rigid dividing line" between the two analyses.[42] "At bottom, both purposeful availment and purposeful direction ask

---

[37] *Schwarzenegger*, 374 F.3d at 802 (citation omitted).

[38] *Id.* (citation omitted).

[39] *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

[40] *Id.*

[41] *Id.* (citations omitted).

[42] *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020).

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 10 of 19
Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 10 of 19

whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."[43]

"Purposeful availment" requires a defendant to have taken "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State."[44] It requires a showing "that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or entering a contractual relationship centered there."[45]

"The governing test for determining whether a defendant has purposefully directed its actions toward the forum is the so-called 'effects test,' derived from *Calder v. Jones* . . . ."[46] "Under that test, '[t]he defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'"[47] While "maintenance

---

[43] *Id.* (internal quotation marks omitted) (quoting *Burger King*, 471 U.S. at 474-75).

[44] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024-25 (2021) (alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) ("To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" (citation omitted)).

[45] *Ford Motor Co.*, 141 S. Ct. at 1025 (alteration in original) (citation omitted).

[46] *Doe v. WebGroup Czech Republic, A.S.*, __ F.4th ___, No. 22-55315, 2024 WL 16828, at *6 (9th Cir. Jan. 2, 2024) (alteration and internal quotation marks omitted) (first citing *Calder v. Jones*, 465 U.S. 783 (1984); and then quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017)).

[47] *Id.* (alteration omitted) (quoting *Axiom Foods*, 874 F.3d at 1069).

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 11 of 19

Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 11 of 19

of a passive website alone cannot satisfy the express aiming prong of the *Calder* effects test[,] . . . operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient."[48] The Ninth Circuit has held that "[i]n determining whether a nonresident defendant has done 'something more,' we have considered several factors, including the interactivity of the defendant's website; the geographic scope of the defendant's commercial ambitions; and whether the defendant 'individually targeted' a plaintiff known to be a forum resident."[49] When a plaintiff does not contend that she was "individually targeted," and the question instead concerns the first two considerations regarding the interactivity of the defendant's website and the geographic scope of the defendant's commercial ambitions, "the plaintiff must show that the website operator 'both actively appealed to and profited from an audience'" in that forum in order "[t]o establish the requisite 'something more.'"[50]

Here, the PAC adequately alleges "something more" than a passive website or passive online advertising sufficient to invoke this Court's specific personal jurisdiction over New Life. First, the PAC alleges that New Life purposefully

---

[48] *Id.* (internal quotation marks omitted) (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011)).

[49] *Mavrix Photo*, 647 F.3d at 1229 (citations omitted).

[50] *WebGroup Czech Republic*, __ F.4th ___, 2024 WL 16828, at *6 (first quoting *Mavrix Photo*, 647 F.3d at 1229; and then quoting *Will Co. v. Lee*, 47 F.4th 917, 922-23 (9th Cir. 2022)).

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 12 of 19
Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 12 of 19

directed its activities at Alaska by "purchas[ing] advertisements on Facebook and Instagram, and us[ing] geographical targeting techniques aimed at Alaska."[51] The PAC further alleges that when a prospective Alaska resident patient "responded to New Life's advertisement, [New Life] would contact [them] and offer them a deal: if they agreed to seek substance abuse treatment at New Life's facility located in southern California, New Life promised to enroll them in a health insurance plan that would cover the cost of the care."[52] Because "individual health insurance carriers in Alaska are effectively obligated under state law to provide coverage outside the state of Alaska and to pay more for medical services than insurers in other states, and also to pay more than public insurers like Medicaid," the PAC alleges that "New Life was motivated to make as much money as it could, and it exploited Alaska's approach to health insurance to do so."[53] In sum, the PAC adequately alleges that New Life "both actively appealed to and profited from an audience" in Alaska.[54]

---

[51] Docket 18-1 at ¶ 23.

[52] Docket 18-1 at ¶ 3.

[53] Docket 18-1 at ¶ 9.

[54] *See WebGroup Czech Republic*, __ F.4th ___, 2024 WL 16828, at *6 (quoting *Will Co.*, 47 F.4th at 922); *Schwarzenegger*, 374 F.3d at 800 (holding that where a motion is evaluated on written briefing rather than an evidentiary hearing, the court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction").

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 13 of 19

Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 13 of 19

Second, whether a claim arises out of a defendant's forum-related activities depends on a "but for" test that evaluates whether the plaintiff's claims would have arisen without the defendant's contacts with the forum.[55] The PAC alleges that Moda's claims "flow directly from New Life's focus on Alaska, including its communications with its Alaskan recruits and misrepresentation of its recruits' income, which occurred while its recruits were in Alaska."[56] The PAC thus adequately alleges that Moda's claims "arise[] out of or relate[] to the defendant's forum-related activities."[57]

Third, "[o]nce Plaintiff satisfies the first two prongs, 'the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.'"[58] An otherwise valid exercise of specific jurisdiction is presumed reasonable.[59] Reasonableness is evaluated based on a seven-factor balancing test where "[a]ll seven factors must be weighed" and no single factor is dispositive:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's

---

[55] *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

[56] *See* Docket 17 at 19 (citing Docket 18-1 at ¶¶ 39-40, 42-44, 49-53); Docket 24 at 21.

[57] *See Schwarzenegger*, 374 F.3d at 802 (citation omitted).

[58] *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1096 (9th Cir. 2023) (quoting *Schwarzenegger*, 374 F.3d at 802).

[59] *Ballard*, 65 F.3d at 1500 (citation omitted).

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 14 of 19

Case 3:23-cv-00132-SLG    Document 25    Filed 01/17/24    Page 14 of 19

state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.[60]

New Life provides only a brief analysis of these factors in its Motion to Dismiss.[61] It does not present a compelling case that this Court's exercise of personal jurisdiction over it would be so unreasonable that the proposed amendment to Moda's complaint would be futile.

### III. Venue

The applicable venue statute provides that venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[62] New Life maintains that venue is not appropriate in Alaska "because the events or omissions giving rise to this controversy occurred in *California*."[63] New Life contends that any alleged targeting of Alaska or communication with Alaska residents "occurred from New Life's home base in California," such that

---

[60] *Ziegler v. Indian River County*, 64 F.3d 470, 474-75 (9th Cir. 1995) (citation omitted); *Herbal Brands*, 72 F.4th at 1096 (quoting *Freestream Aircraft*, 905 F.3d at 607).

[61] New Life asserts that it did not purposefully interject itself into Alaska's affairs; that the burden of suit in Alaska is high, especially given New Life's location in California, the distance of travel, and location of potentially relevant materials and witnesses in California; that the most efficient judicial resolution of the controversy would be in California, "where New Life's alleged conduct occurred and its witnesses live"; and that California is an alternative forum. *See* Docket 12 at 32 (citations omitted).

[62] 28 U.S.C. § 1391(b)(2).

[63] Docket 12 at 33 (emphasis in original); Docket 21 at 21-22.

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 15 of 19
Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 15 of 19

New Life should not be "haled into a remote district having no real relationship to the dispute."[64] However, Moda's PAC alleges that "New Life intentionally targeted Alaska as a source of recruits because of Alaska's favorable laws respecting coverage and payment for out-of-network residential care."[65] Thus, according to Moda, Alaska is not some "remote district having no real relationship to the dispute"; rather, the PAC adequately alleges that a substantial part of the events giving rise to this suit took place in Alaska such that amendment would not be futile.[66]

IV. **Failure to State a Claim**

Finally, New Life contends that leave to amend should be denied because "the PAC fails to satisfy the plausibility and particularity requirements" of Rule 8 and Rule 9(b) of the Federal Rules of Civil Procedure.[67] Rule 8 requires a complaint to allege "enough facts to state a claim to relief that is plausible on its face."[68] Rule 9(b) "applies where a claim is 'grounded in fraud' or 'sound[s] in

---

[64] Docket 23 at 17 (quoting *Knuttel v. Omaze, Inc.*, 572 F. Supp. 3d 866, 870 (N.D. Cal. 2021)).

[65] Docket 24 at 22 (citing Docket 18-1 at ¶¶ 9, 32-35, 38).

[66] *See Knuttel*, 572 F. Supp. 3d at 870; *Shee Atika Languages, LLC v. Kershner*, Case No. 1:07-CV-00009-JWS-DMS, 2008 WL 11429819, at *5 (D. Alaska Feb. 25, 2008) ("[T]he chosen venue does not need to be the best venue. The proper analysis for this Court is not whether other forums have greater contacts with the case or if larger parts of the events occurred in another forum. Rather, the proper analysis is whether or not the District of Alaska has a substantial connection to the case." (citations omitted)).

[67] Docket 21 at 22-23.

[68] *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citing *Bell Atl.*

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 16 of 19
Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 16 of 19

fraud.'"[69] Under Rule 9(b), "allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'"[70] New Life contends that the PAC "fails to allege plausible or particular facts regarding New Life's conduct."[71]

Moda contends that its proposed amendments "comprehensively address[] the 'who, what, when, where, and how' of the misconduct charged."[72] Moda maintains that the PAC

> describes New Life's scheme with particularity, explaining that New Life sought to benefit from Alaska's favorable repayment laws and determined that it could do so by recruiting Alaska residents and fraudulently enrolling them in a health plan offered by Moda—which would pay for New Life's services at a rate higher than public payers like Medicaid or payers in other states.[73]

---

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1056-57 (9th Cir. 2023) (first citing *Bell Atl. Corp.*, 550 U.S. 544; and then citing *Ashcroft*, 556 U.S. 662).

[69] *Finjan Holdings, Inc.*, 58 F.4th at 1057 (alteration in original) (citations and internal quotation marks omitted).

[70] *Id.* ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity.").

[71] Docket 21 at 23.

[72] Docket 18 at 3 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.")).

[73] Docket 24 at 24 (citing Docket 18-1 at ¶¶ 7, 9-10, 31-38).

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 17 of 19
Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 17 of 19

In addition, Moda points out that the PAC details that New Life signed up an Alaska resident (Doe #3) "for a Moda health plan by attributing to her an income that was not her true income," and that "New Life subsequently billed Moda for the services it provided to Doe #3, thereby reaping the benefits of Alaska's favorable repayment rate."[74]

The Court finds that Moda's PAC contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[75] And the PAC adequately addresses the "'who, what, when, where, and how' of the misconduct charged," such that it meets the heightened pleading standard of Rule 9(b).[76] To the extent that New Life disputes the viability of the legal claims that Moda alleges in its PAC, the Court does not address them with respect to Moda's motion to amend, but New Life may instead present them in a renewed motion to dismiss.[77]

For the foregoing reasons, New Life has not demonstrated that permitting Moda leave to file its PAC would be futile.

---

[74] Docket 24 at 24-25 (citing Docket 18-1 at ¶¶ 50, 56).

[75] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

[76] *See* Docket 24 at 24 (quoting *Vess*, 317 F.3d at 1106); *see also* discussion *supra* pp. 7-8.

[77] *See* Docket 21 at 23-26; *see, e.g.*, *McClurg v. Maricopa County*, Case No. CIV-09-1684-PHX-MHB, 2010 WL 3885142, at *1 (D. Ariz. Sept. 30, 2010) ("The merits or facts of a controversy are not properly decided in a motion for leave to amend and should instead be attacked by a motion to dismiss for failure to state a claim or for summary judgment.").

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 18 of 19
Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 18 of 19

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Plaintiff's Motion to Amend Complaint at Docket 18 is GRANTED. Defendant's "Motion to Dismiss Complaint under Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3), and (b)(6); or in the alternative to transfer under 28 U.S.C. § 1404 to the Central District of California" at Docket 12 is DENIED, but without prejudice to its renewal after Plaintiff has filed its amended complaint. In accordance with Local Civil Rule 15.1, Plaintiff shall file a complete, clean copy of the proposed amended complaint within seven days of the date of this order.

DATED this 17th day of January, 2024.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:23-cv-00132-SLG, *Moda Assurance Co. v. New Life Treatment Center*
Order re Defendant's Motion to Dismiss or Transfer to Central District of California and Plaintiff's Motion to Amend Complaint
Page 19 of 19
Case 3:23-cv-00132-SLG   Document 25   Filed 01/17/24   Page 19 of 19