# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

MODA HEALTH PLAN, INC.,

        Plaintiff,

    v.

NEW LIFE TREATMENT CENTER,

        Defendant.

Case No. 3:23-cv-00132-SLG

## ORDER ON PLAINTIFF'S PARTIAL MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

Before the Court at Docket 39 is Plaintiff Moda Health Plan, Inc.'s ("Moda") Partial Motion to Dismiss New Life Treatment Center's Counterclaims. Defendant New Life Treatment Center ("New Life") responded in opposition at Docket 41, to which Moda replied at Docket 42. Oral argument was not requested and was not necessary to the Court's decision.

## BACKGROUND

The facts of this case are more fully set out in the Court's prior order at Docket 35. As relevant here, Moda, a health insurance company based in Alaska, sued New Life, a substance abuse treatment center in California.[1] Moda's First Amended Complaint alleges three causes of action: (1) fraud/intentional misrepresentation under Alaska law; (2) negligent misrepresentation under Alaska

---

[1] *See* Docket 26 at ¶¶ 15, 20.

law; and (3) civil conspiracy under Alaska law.[2]  The Complaint asserts that "New Life orchestrated a deceptive and unlawful scheme through which it intentionally misrepresented Alaskans' income to sign them up for Moda health insurance plans," the result of which "has been fraudulent claims [against Moda] of approximately $3.3 million."[3]

New Life filed an Answer and eight counterclaims against Moda.[4]  New Life maintains that its claims for payment are legitimate and that Moda is legally obligated to pay them.[5]  New Life's counterclaims allege that "New Life made [verification of benefits ("VOB")] calls to Moda for each Moda Patient and for every service provided," which sometimes "meant multiple VOB calls to verify coverage for additional, changing, or continuing treatment. On these calls, Moda verified coverage for each Moda Patient for every service requested."[6]  The counterclaims further allege that "Moda required preauthorization for detox, residential, and [partial hospitalization program] services," and that, during pre-authorization calls, "Moda reiterated its promises to pay and expressly authorized treatment."[7]  Additionally, New Life alleges that it "made continuing authorization calls to

_____

[2] Docket 26 at ¶¶ 60-77.

[3] Docket 26 at ¶ 1.

[4] Docket 36.

[5] Docket 36 at 16, ¶ 2.

[6] Docket 36 at 26, ¶ 52.

[7] Docket 36 at 26, ¶ 53.

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 2 of 25

Case 3:23-cv-00132-SLG    Document 43    Filed 02/05/25    Page 2 of 25

Moda—even where no formal pre-authorization was required—to reconfirm that New Life was providing treatment to the Moda Patients and that Moda would cover that treatment."[8] According to New Life's counterclaims, "[i]n the verification and authorization calls between the parties, Moda promised to pay New Life a specific rate: the usual, customary, and reasonable" ("UCR") rate, a rate that is "widely understood in the healthcare industry" and is "based on a percentile value of charges for the same service in the geographic area."[9]

New Life provides "representative examples" of five patients and alleges that New Life conducted VOB calls for each patient, during which Moda confirmed that each patient had a Moda health plan and that treatment was covered, represented that it "would reimburse New Life for its treatment services at a UCR rate," and provided authorization numbers for each course of treatment.[10] New Life alleges the specific dates on which the VOB calls were made, four of which occurred in January, February, or March of 2023, and identifies by first name the Moda representative with whom New Life spoke.[11] New Life alleges that it treated all five

<hr>

[8] Docket 36 at 26, ¶ 54.

[9] Docket 36 at 26, ¶¶ 55-56; *see also* Docket 36 at 29, ¶ 69 ("For each pre-authorization New Life sought from Moda, it also received an authorization number from Moda, which indicated that Moda agreed the services were medically necessary, that it would pay for the services . . . , and that a contract for that payment had formed between New Life and Moda.").

[10] Docket 36 at 32-36, ¶¶ 85, 87, 89-90, 92, 94, 96, 98-99, 101, 103, 105, 107-08, 110, 112, 114, 116-17, 119, 121, 123, 125-26, 128.

[11] Docket 36 at 32-36, ¶¶ 85-86, 94-95, 103-04, 112-13, 121-22.

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 3 of 25

Case 3:23-cv-00132-SLG     Document 43     Filed 02/05/25     Page 3 of 25

patients and Moda has not paid New Life the full amount owed for any of the patients.[12]

As described by New Life, Title 3 of the Alaska Administrative Code, § 26.110(a), "the 80th Percentile Rule[,] mandates that payers pay [out-of-network ("OON")] providers a UCR rate and do so at the 80th percentile."[13] New Life maintains that "during the early course of Moda's relationship with New Life, Moda paid New Life consistent with its obligations under the 80th Percentile Rule," paying less than the specified amounts only when a "patient's cost-sharing responsibilities covered a portion of the amount Moda otherwise owed, and sometimes paying more to cover interest."[14] But the counterclaims allege that Moda stopped paying some claims beginning in October 2022 and ceased all payments by December 2022.[15] New Life asserts that Moda owes New Life approximately $3.3 million.[16]

New Life brings the following eight counterclaims:

---

[12] Docket 36 at 32-36, ¶¶ 91, 93, 100, 102, 109, 111, 118, 120, 127, 129.

[13] Docket 36 at 27, ¶ 57. New Life acknowledges that § 26.110 was amended effective January 1, 2024; the amendment eliminated the 80th Percentile Rule. Docket 36 at 16 n.2. However, all relevant claims arose before the amendment took effect and the Court therefore refers to the pre-2024 version of § 26.110. Alaska Admin. Code tit. 3, § 26.110 (2015).

[14] Docket 36 at 27, ¶ 59 (alleging that Moda paid specific per diem amounts for four different treatment codes); *see* Docket 36 at 27-28, ¶¶ 61-65 (providing examples of prior payment by Moda to New Life for treatment of specific patients).

[15] Docket 36 at 30, ¶ 77.

[16] Docket 36 at 31, ¶ 83.

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 4 of 25

Case 3:23-cv-00132-SLG     Document 43     Filed 02/05/25     Page 4 of 25

- Counterclaim 1: Breach of Oral Contract;

- Counterclaim 2: Breach of Implied Contract;

- Counterclaim 3: Promissory Estoppel/Unjust Enrichment/Quantum Meruit;

- Counterclaim 4: Alaska Common Law Breach of Duty of Good Faith and Fair Dealing;

- Counterclaim 5: Fraudulent Inducement/Fraudulent Misrepresentation;

- Counterclaim 6: Breach of Written Contract (By Assignment);

- Counterclaim 7: Violations of Alaska Stat. § 21.07.030(a) and Alaska Admin. Code tit. 3, § 26.110; and

- Counterclaim 8: Violation of Alaska Stat. § 21.36.495 (Prompt Pay Law).[17]

Moda moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss all but Counterclaim 6 of New Life's counterclaims, contending that New Life fails to state a claim as to Counterclaims 1-5 and 7-8.[18] The Court addresses each in turn. The Court has subject matter jurisdiction based on diversity of citizenship.[19]

## LEGAL STANDARD

---

[17] Docket 36 at 36-55, ¶¶ 130-235.

[18] Docket 39 at 5-17.

[19] *See* Docket 26 at ¶ 17; Docket 36 at ¶ 17.

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 5 of 25

A party may seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for a complaint's "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[20] "On a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff, taking all [plaintiff's] allegations as true and drawing all reasonable inferences from the complaint in [plaintiff's] favor."[21] Nonetheless, "the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."[22]

When a federal district court sits in diversity, the court applies state substantive law to the state law claims.[23] "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it."[24]

## DISCUSSION

### I.   Counterclaims 1 and 2 – Breach of Oral or Implied Contract

---

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[21] *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005) (citation omitted).

[22] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

[23] *Mason and Dixon Intermodal, Inc. v. Lapmaster Intern. LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011) (citations omitted).

[24] *Westlands Water Dist. v. Amoco Chemical Co.*, 953 F.2d 1109, 1111 (9th Cir. 1991).

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 6 of 25

Under Alaska law, "[e]stablishing breach of contract requires 'proof of the existence of a contract, breach, and damages.'"[25]  "In the absence of an express contract, an implied contract may still exist 'where the court finds from the surrounding facts and circumstances that the parties intended to make a contract but failed to articulate their promises.'"[26]  "For either an express or implied contract, '[a]n agreement is unenforceable if its terms are not reasonably certain.'"[27]  "A contract's terms are reasonably certain 'if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.'"[28]  "The contract amount, in particular, must be definite and specific."[29]

Moda contends that New Life fails to state a breach of contract claim because "allegations that an insurer will pay a usual, reasonable, and customary rate simply do not establish the specific facts required for [a court] to determine there was any meeting of the minds between the parties."[30]  In support, Moda relies on *Aton Center, Inc. v. Premera Blue Cross,* a case applying California law, for the proposition that "VOB and authorization phone calls alone are generally insufficient

---

[25] *Societe Fin., LLC v. MJ Corp.*, 542 P.3d 1159, 1166 (Alaska 2024) (quoting *Brooks Range Petrol. Corp. v. Shearer*, 425 P.3d 65, 79 (Alaska 2018)).

[26] *Id.* (quoting *Labrenz v. Burnett*, 218 P.3d 993, 998 (Alaska 2009)).

[27] *Id.* (alteration in original) (quoting *Davis v. Dykman*, 938 P.2d 1002, 1006 (Alaska 1997)).

[28] *Id.* (quoting *Young v. Kelly*, 334 P.3d 153, 157 (Alaska 2014)).

[29] *Id.* (quoting *Young*, 334 P.3d at 157).

[30] Docket 39 at 7 (alteration in original) (internal quotation marks omitted).

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 7 of 25

to form the basis for an oral or implied contract because they lack a manifestation of intent to enter into a contract."[31]  While that might also be true under Alaska law, the district court in that case also observed that "courts have found that factual allegations of coverage beyond VOB and authorization phone calls may be sufficient to allege the existence of an oral or implied contract."[32]

Here, contrary to Moda's characterization of New Life's allegations, New Life has alleged more than VOB calls alone.  For five representative patients, New Life's counterclaims allege the particular date on which it made a VOB call to Moda; the Moda representative spoken to; the particulars of the patient's insurance coverage; that Moda confirmed that OON substance use disorder treatment was covered by the patient's insurance plan; that Moda confirmed that it would reimburse New Life for treatment services at the UCR rate, which is the 80th percentile under Alaska law; and that New Life treated the patient.[33]  The counterclaims further allege that New Life "received an authorization number from Moda, which indicated that Moda agreed the services were medically necessary, that it would pay for the services . . . , and that a contract for that payment had formed between New Life and Moda."[34]

---

[31] Docket 39 at 6-7; *Aton Ctr., Inc. v. Premera Blue Cross*, Case No. 3:20-cv-00501-WQH-BGS, 2020 WL 4747756, at *3 (S.D. Cal. Aug. 17, 2020).

[32] *Aton Ctr., Inc.*, 2020 WL 4747756, at *4 (collecting cases).

[33] Docket 36 at 32-36, ¶¶ 84-129.

[34] Docket 36 at 29, ¶ 69.

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 8 of 25

Case 3:23-cv-00132-SLG     Document 43     Filed 02/05/25     Page 8 of 25

More generally, New Life's counterclaims allege that during "pre-authorization calls . . . Moda reiterated its promises to pay and expressly authorized treatment," and "New Life also made continuing authorization calls to Moda—even where no formal pre-authorization was required—to reconfirm that New Life was providing treatment to the Moda Patients and that Moda would cover that treatment."[35]  The counterclaims also allege that Moda paid New Life the 80th percentile UCR on the same claims for the treatment of other patients.[36]

Based on the foregoing, the Court finds that New Life's counterclaims sufficiently allege a claim for breach of an oral or implied contract.[37]  New Life has alleged that Moda agreed to pay New Life for the treatment of specific patients

---

[35] Docket 36 at 26, ¶¶ 53-54.

[36] Docket 36 at 27-28, ¶¶ 59-65.

[37] In a memorandum opinion in *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, the Ninth Circuit held that the plaintiff introduced sufficient evidence "for a reasonable factfinder to conclude that an enforceable contract had been formed under governing California law" when the plaintiff provided evidence of "hundreds of verification and authorization calls, . . . a prior course of dealing with Cigna, specific and individualized treatment plans, as well as agreements over specific percentages of UCR rates for the services rendered."  Case No. 20-56122, 2022 WL 137547, at *1 (9th Cir. Jan. 14, 2022).  After remand, the Ninth Circuit ultimately held that plaintiff's state law breach of contract claims were preempted by ERISA because they impermissibly referenced an ERISA plan.  *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 103 F.4th 597, 603-04 (9th Cir. 2024). The Court considers the Ninth Circuit's memorandum opinion not as precedent but as persuasive as to the sufficiency of the allegations by New Life. *See also Cal. Spine & Neurosurgery Inst. v. United Healthcare Servs., Inc.*, Case No. 18-CV-2867 PSG (AFM), 2018 WL 6074567, at *4 (C.D. Cal. June 28, 2018) (finding that "Plaintiff has sufficiently alleged that an oral contract was formed between the parties" based on allegations of "specific names and dates of the calls between Plaintiff and Defendant regarding payment for Patient's services, what the services would be, what was said, and by whom—including that Defendant agreed to pay a specific price: 75% of the UCR rate until Patient's MOOP expense was met, and 100% of the UCR rate afterwards").

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 9 of 25

Case 3:23-cv-00132-SLG     Document 43     Filed 02/05/25     Page 9 of 25

insured by Moda, that the terms of the agreement required payment at the UCR rate of the 80th percentile,[38] that Moda had previously paid such rates to New Life, and that New Life suffered damages as a result of Moda's breach.[39]   The Court finds that New Life's counterclaims "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"[40] for breach of an oral or implied contract and denies Moda's Partial Motion to Dismiss as to Counterclaims 1 and 2.

## II.   Counterclaim 3 – Promissory Estoppel

Under Alaska law, a claim for promissory estoppel requires proof of four elements: "(1) an actual promise that induced action or forbearance; (2) the action induced was actually foreseen or reasonably foreseeable; (3) the action amounted to a substantial change in position; and (4) enforcement of the promise is

---

[38] Moda contends that there was no agreement between the parties that Moda would pay New Life at the 80th percentile of the UCR because "New Life did not know of the 80th percentile rule before the initiation of this suit, [and so] certainly there could have been no 'meeting of the minds' that the rate at which Moda would reimburse New Life for its services was the 80th percentile of charges in the geographic area."  Docket 39 at 10 (referring to Docket 27-4 at 3, ¶ 19 (Malek Decl.), in which a New Life representative states that New Life was not aware of the 80th Percentile Rule under Alaska law before this litigation commenced).  However, as New Life alleges, in the insurance industry, "a UCR rate is usually a rate reflecting the 75th or 80th percentile of charges for the same service in the geographic area."  Docket 36 at 26-27, ¶ 56.  As such, there could still be a plausible meeting of the minds as to a payment of a UCR in the 80th percentile unrelated to the Alaska law as shown by the parties' course of dealing and the alleged industry norm.

[39] *See Great W. Sav. Bank v. George W. Easley Co.*, 778 P.2d 569, 577-78 (Alaska 1989) (holding that complaint alleging that defendant "had a contractual obligation to make direct payments to" plaintiff, defendant "breached this contract," and plaintiff "suffered damages" was sufficient for purposes of pleading breach of contract claim).

[40] *Ashcroft*, 556 U.S. at 678 (citation omitted).

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 10 of 25

necessary in the interest of justice."[41]  An actual promise must be definitive, very clear, and use precise language.[42]  "An actual promise is analytically identical to the acceptance of an offer in contract law, meaning the promise must manifest an unequivocal intent to be bound."[43]

Moda contends that "[f]or the same reasons New Life cannot establish that there was a 'meeting of the minds' for purposes of its breach of contract claims, it cannot establish that there was an 'actual promise' for purposes of promissory estoppel."[44]  Because the Court has rejected Moda's challenges to New Life's breach of contract claims and Moda does not argue any other ground for the Court to dismiss the promissory estoppel claim, the Court denies Moda's Partial Motion to Dismiss as to Counterclaim 3.

## III. Counterclaim 4 – Alaska Common Law Breach of Duty of Good Faith and Fair Dealing

Under Alaska law, "the covenant of good faith and fair dealing . . . is implied in all contracts."[45]  "The covenant includes subjective and objective elements."[46]

---

[41] *Sea Hawk Seafoods, Inc. v. City of Valdez*, 282 P.3d 359, 366 (Alaska 2012) (quoting *Safar v. Wells Fargo Bank, N.A.*, 254 P.3d 1112, 1117 (Alaska 2011)).

[42] *Id.* (citations omitted).

[43] *Id.* (internal quotation marks and citations omitted).

[44] Docket 39 at 11.

[45] *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 697 (Alaska 2014) (alteration in original) (citation omitted).

[46] *Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Motors Corp.*, 221 P.3d 977, 992 (Alaska 2009) (citation omitted).

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 11 of 25
Case 3:23-cv-00132-SLG     Document 43     Filed 02/05/25     Page 11 of 25

"The subjective element prohibits one party from acting to deprive the other of the benefit of the contract" "in bad faith."[47]  "The objective element requires each party to act in a manner that a reasonable person would regard as fair."[48]

Moda maintains that New Life has inadequately pled a breach of the subjective component of the covenant of good faith and fair dealing because "although New Life alleges without any basis or support that Moda brought this lawsuit to 'scar[e] New Life,' New Life fails to allege any facts indicating subjective bad faith."[49]

> In response, New Life points to its allegations in its counterclaims that Moda
>
> (1) unreasonably failed to process or pay New Life's claims; (2) denied claims without any basis and without conducting a reasonable investigation or providing a valid explanation for its denials, despite its obligations under Alaska law; (3) promised New Life to pay for its treatment of Moda Patients, at specific rates, but then failed to do so despite that promise; and (4) filed a baseless lawsuit against New Life to pressure New Life into accepting less than the full amount owed.
>
> In addition, Moda's conduct constitutes a violation of Alaska's Unfair Claim Settlement Practices Act ("UCSPA"), which may constitute evidence of unreasonableness on the part of an insurer in establishing a claim for the breach of the duty of good faith and fair dealing. *See* Alaska Stat. § 21.36.125.
>
> Moda violated the UCSPA, among other ways, by: (1) failing to acknowledge and act reasonably promptly upon communications from New Life regarding claims, *see id.* § 21.36.125(a)(2); (2) failing

---

[47] *Id.* (internal quotation marks and citations omitted); *Crowley v. State, Dep't of Health & Social Servs.*, 253 P.3d 1226, 1230 (Alaska 2011) (citation omitted).

[48] *Anchorage Chrysler Ctr., Inc.*, 221 P.3d at 992 (internal quotation marks and citations omitted).

[49] Docket 39 at 15 (alteration in original) (quoting Docket 36 at 17, ¶ 5).

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 12 of 25

to adopt and implement reasonable standards for the prompt investigation of claims and refusing to pay claims without a reasonable investigation of all available information, *see id.* § 21.36.125(a)(3), (4); and (3) failing to promptly provide a reasonable explanation for its denial of claims or offers of compromise settlement, *see id.* § 21.36.125(a)(15).[50]

New Life's counterclaims allege that Moda stopped paying some claims in October 2022 and stopped all payments in December 2022.[51] Yet, during VOB and authorization calls in early 2023, New Life alleges that named representatives of Moda confirmed that patients had a Moda health plan, that treatment was covered, that Moda "would reimburse New Life for its treatment services at a UCR rate," and that Moda provided authorization numbers for each course of treatment.[52] If these allegations were proven, a fact finder could infer that when Moda promised to pay New Life for treatment of covered patients in 2023, it knew that it would not pay those claims as all payments to New Life had already ceased. The Court finds that this is sufficient factual matter, if accepted as true and drawing all reasonable inferences in New Life's favor, to state a claim for breach of the covenant of good faith and fair dealing that is "plausible on its face."[53]

---

[50] Docket 41 at 23 (quoting Docket 36 at 44-45, ¶¶ 175-77).

[51] Docket 36 at 30, ¶ 77.

[52] Docket 36 at 32-36, ¶¶ 94, 96, 98-99, 101, 103, 105, 107-08, 110, 112, 114, 116-17, 119, 121, 123, 125-26, 128.

[53] *See Ashcroft*, 556 U.S. at 678 (citation omitted).

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 13 of 25

New Life's counterclaims also contain conclusory allegations that Moda has violated the UCSPA as evidence of Moda's bad faith. The Court finds that New Life has not adequately pled facts supporting its allegations that Moda "fail[ed] to acknowledge and act reasonably promptly upon communications from New Life regarding claims," "fail[ed] to adopt and implement reasonable standards for the prompt investigation of claims and refus[ed] to pay claims without a reasonable investigation of all available information," and "fail[ed] to promptly provide a reasonable explanation for its denial of claims or offers of compromise settlement."[54]

New Life's counterclaims allege that "[d]espite New Life's extensive efforts to work with Moda toward a fair resolution, including providing detailed documentation and engaging in efforts to receive proper payment, Moda has refused to fulfill its statutory and contractual obligations as an insurer," and "New Life made concerted and good faith efforts to obtain proper payments from Moda, but Moda refused to deal with New Life or make the payments it was legally required to make."[55]  However, New Life's counterclaims are devoid of any factual allegations as to when New Life contacted Moda to resolve specific unpaid claims, how Moda responded, or Moda's standards for investigating claims. As such, the Court grants Moda's Partial Motion to Dismiss New Life's Counterclaim 4 as to any

---

[54] *See* Docket 36 at 45, ¶ 177.

[55] Docket 36 at 17, ¶ 5; Docket 36 at 30, ¶ 78.

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 14 of 25

breach of the covenant of good faith and fair dealing based on alleged violations of the UCSPA.

## IV.   Counterclaim 5 – Fraudulent Misrepresentation

Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  "Particularity includes the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false.  Knowledge, however, may be pled generally."[56]  Under Alaska law, the elements of fraudulent misrepresentation are: "(1) a misrepresentation of fact or intention, (2) made fraudulently (that is, with 'scienter'), (3) for the purpose or with the expectation of inducing another to act in reliance, (4) with justifiable reliance by the recipient, (5) causing loss."[57]

Moda contends that "New Life has not alleged that Moda's conduct was fraudulent" because "New Life conclusorily alleges that 'Moda knew, when it issued authorizations and made VOB representations, that it would not fully pay New Life's invoices.'"[58]   The Court construes Moda's argument as attacking the sufficiency of New Life's pleading of the knowledge element of this claim.

---

[56] *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (alteration, internal quotation marks, and citation omitted).

[57] *Recreational Data Servs.*, 404 P.3d at 126.

[58] Docket 39 at 13 (quoting Docket 36 at 46, ¶ 187).

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 15 of 25

Case 3:23-cv-00132-SLG    Document 43    Filed 02/05/25    Page 15 of 25

The Court finds that New Life has adequately pled the knowledge element of its fraudulent misrepresentation claim for the same reason it found the bad faith counterclaim adequately pled. New Life's counterclaims allege that Moda stopped paying some claims in October 2022 and stopped all payments in December 2022.[59] During VOB and authorization calls in early 2023, named representatives of Moda confirmed that patients had a Moda health plan, that treatment was covered, that Moda "would reimburse New Life for its treatment services at a UCR rate," and that Moda provided authorization numbers for each course of treatment.[60] From these facts, a fact finder could infer that when Moda promised to pay New Life for treatment of covered patients in 2023, it knew that it would not pay those claims as all payments to New Life had already ceased. Accordingly, the Court finds that this is sufficient factual matter, if accepted as true and drawing all reasonable inferences in New Life's favor, to state a fraudulent misrepresentation claim that is "plausible on its face."[61] The Court therefore denies Moda's Partial Motion to Dismiss New Life's Counterclaim 5.

---

[59] Docket 36 at 30, ¶ 77.

[60] Docket 36 at 32-36, ¶¶ 85, 87, 89-90, 92, 94, 96, 98-99, 101, 103, 105, 107-08, 110, 112, 114, 116-17, 119, 121, 123, 125-26, 128.

[61] *See Recreational Data*, 404 P.3d at 126; *Ashcroft*, 556 U.S. at 678 (citation omitted); *Doe*, 419 F.3d at 1062.

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 16 of 25

## V. Counterclaims 7 and 8 – Violations of Alaska Statutes

New Life raises two counterclaims under Alaska statutory law: Counterclaim 7 is based primarily on Title 3, Chapter 26, Section 110 of the Alaska Administrative Code ("80th Percentile Rule"), with reference to Alaska Statute § 21.07.030(a),[62] and Counterclaim 8 alleges a violation of Alaska Statute § 21.36.495 ("Prompt Pay Law").[63] Moda maintains that those provisions do not provide New Life with private causes of action and therefore Counterclaims 7 and 8 must be dismissed.[64]

At the time New Life's claims arose, the 80th Percentile Rule provided that payment for covered services should be based on an amount that "is equal to or greater than the 80th percentile of charges" using "a statistically credible profile of covered health care services and supplies on which to base payment."[65]

Alaska Statute § 21.36.495, the Prompt Pay Law, provides, in relevant part, that "[a] health care insurer shall pay or deny indemnities under a health care insurance policy . . . within 30 calendar days after the insurer or a third-party

---

[62] Alaska Stat. § 21.07.030(a) requires health care insurers to "offer a non-network option to covered persons at initial enrollment." Moda maintains that it complied with that statute in this case, which New Life does not appear to dispute. Docket 42 at 19; Docket 41 at 26 ("Count 7 relates primarily to Moda's failure to pay as required by the 80th Percentile Rule, Alaska Admin. Code tit. 3, § 26.110. . . . [That provision] imposes a concrete duty on Moda, particularly when coupled with Alaska Stat. § 21.07.030(a) . . . .").

[63] Docket 36 at 52-56, ¶¶ 216-35.

[64] Docket 39 at 16-17.

[65] Alaska Admin. Code tit. 3, § 26.110(a) (2015).

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 17 of 25

administrator under contract with the insurer receives a clean claim."[66]  It further provides that if a health care insurer declines to pay or denies a health insurance claim, the insurer is required to provide notice to the covered individual or the provider of the medical services if the claim was assigned.[67]  And if timely notice is not provided, the claim "is presumed a clean claim" and interest on the claim accrues "at a rate of 15% annually beginning on the day after notice was due and until the claim is paid."[68]

Moda relies on *O.K. Lumber Co. v. Providence Washington Insurance Co.* in support of its assertion that "New Life has not demonstrated why this Court should depart from the Alaska Supreme Court's practice of denying private rights of action to third parties under Title 21."[69]  In that case, the Alaska Supreme Court held that "a third party claimant has no cause of action against an insurer under AS 21.36.125."[70]  The court explained that

> Chapter 36 of title 21 governs trade practices and frauds in the insurance industry. The purpose of chapter 36 is to 'regulate trade practices in the business of insurance' by defining and prohibiting 'unfair methods of competition or unfair or deceptive acts or practices.'

---

[66] Alaska Stat. § 21.36.495(a).

[67] *Id.* § 21.36.495(b).

[68] *Id.* § 21.36.495(c).  The law also provides that if a health care insurer provides notice as required and requests information needed to adjudicate the claim, the insurer shall pay the claim within a certain amount of time, or the claim will be presumed to be a clean claim with interest accruing at 15%.  *Id.* § 21.36.495(d).

[69] Docket 42 at 18 (citing *O.K. Lumber Co. v. Providence Wash. Ins. Co.*, 759 P.2d 523 (Alaska 1988)).

[70] *O.K. Lumber Co.*, 759 P.2d at 527.

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 18 of 25
Case 3:23-cv-00132-SLG     Document 43     Filed 02/05/25     Page 18 of 25

The Unfair Claim Settlement Practices Act prohibits an insurer from too frequently engaging in certain acts and practices. The director of insurance has authority to enforce chapter 36. The director may conduct an investigation, institute proceedings, issue a stop order, impose a penalty, or revoke a license. The director may also seek injunctive relief. In addition, violation of a provision of title 21 or regulations promulgated thereunder constitutes a 'fraudulent insurance act' and a class B misdemeanor.[71]

The Supreme Court reasoned that "much in the statute . . . suggests that the legislature did not intend to create a private right of action for damages," as "[t]he statute prohibits acts committed so frequently as to become a trade practice [and so] it does not readily lend itself to enforcement by a private cause of action arising from a single claim"; "remedies for violations are set forth specifically and in detail, giving rise to an implication of exclusivity"; "the list of acts prohibited is extensive, some violations may be relatively minor, and the standards for determining whether a prohibited act has been committed are often imprecise."[72] Indeed, in 2000, the Alaska Legislature amended the UCSPA to expressly foreclose a private right of action for a violation of this statute.[73]

The Court reads *O.K. Lumber Co.*'s holding as limited to the UCSPA, not as precluding a private right of action for all provisions in Title 21.[74] The Court

---

[71] *Id.* at 526-27 (first quoting Alaska Stat. § 21.36.010; then citing § 21.36.125; then citing § 21.06.080; then citing § 21.36.320.; then citing § 21.36.330; and then citing § 21.36.360(p), (q)(8)).

[72] *Id.* at 527 (citations omitted).

[73] 2000 Alaska Sess. Laws ch. 97, § 6.

[74] *See Peter v. Schumacher Enters.*, 22 P.3d 481, 488-90 (Alaska 2001) (distinguishing Alaska Stat. § 21.89.020(c), (e) from the Unfair Claim Settlement Practices Act and holding that the

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 19 of 25

therefore will assess whether the legislature intended to create a private cause of action for either the 80th Percentile Rule or the Prompt Pay Law.

In deciding whether to imply a private cause of action from a statute, Alaska courts look to "Section 874A of the Restatement (Second) of Torts," which provides factors a court should consider.[75]  Those factors are

> (1) The nature of the legislative provision—is it clear and specific or broad and general?

> (2) The adequacy of existing remedies—are they sufficient to accomplish the policy of the provision or do they require supplementation?

> (3) Will allowing an implied tort action based on the statutory provision interfere with statutory remedies or supplement existing means of enforcement?

> (4) The significance of the purpose of the legislative provision.

> (5) The extent of the change in tort law that permitting an implied cause of action would bring about.

> (6) The burden the new implied tort cause of action will place on judicial machinery.[76]

First, the Court considers the 80th Percentile Rule.  The first factor weighs in favor of implying a cause of action because the rule is clear and specific, requiring payment "equal to or greater than the 80th percentile of charges" using

---

factors in Section 874A of the Restatement (Second) of Torts weighed in favor in implying a private right of action).

[75] *Id.* at 488 & n.30 (collecting cases).

[76] *Id.* at 489.

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 20 of 25

"a statistically credible profile of covered health care services and supplies on which to base payment."[77]

Concerning the second factor relating to the adequacy of existing remedies, New Life pled its claim based on the 80th Percentile Rule in the alternative, recognizing that "to the extent New Life is able to recover under its other, common law claims, there is an 'alternative common law cause of action available.'"[78] Because New Life has stated a plausible claim that Moda was contractually obligated to pay New Life's claims at the 80th percentile rate under either an oral or implied contract, this factors weighs strongly against implying a private right of action.

As to the third factor, implying a cause of action will supplement existing enforcement of the rule, but, as the 80th Percentile Rule has subsequently been eliminated, this factor does not weigh so heavily in favor of implying a private cause of action.[79] The fourth factor, the significance of the purpose of the provision, is neutral here. The rule has been eliminated, undermining its significance, and—if industry practice generally provides for payment rates in the 75th or 80th

---

[77] *See* Alaska Admin. Code tit. 3, § 26.110(a) (2015).

[78] Docket 41 at 27 n.11 (quoting *Alaska Marine Pilots v. Hendsch*, 950 P.2d 98, 105 (Alaska 1997)).

[79] *See Peter*, 22 P.3d at 489 ("[I]it is difficult to see how providing an implied tort remedy could interfere with state enforcement. The tort action should provide a meaningful incentive to insurance companies to comply with the statutory requirements.").

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 21 of 25

Case 3:23-cv-00132-SLG    Document 43    Filed 02/05/25    Page 21 of 25

percentiles—a regulation requiring such payments may be largely superfluous. With respect to factors five and six, the extent of change in tort law and burden on the courts, the Court finds that they both weigh against implying a private cause of action because a breach of contract claim provides New Life with an adequate remedy to recover any purported agreed-upon payment rate. In sum, the Court finds that the factors weigh against implying a private cause of action by a provider of medical services to enforce the 80th Percentile Rule.

The Court now turns to the Prompt Pay Law. The first factor weighs in favor of implying a cause of action because the law is clear and specific, providing particular time frames for payment of a clean claim, notice if a payment is denied or if additional information is needed, and a penalty of 15% interest for late payments.[80] Concerning the second factor, there is no adequate existing remedy, as the payment of 15% interest would not be recoverable on a breach of an oral or implied contract claim. Rather, the legislature's inclusion of a 15% interest provision clearly lends itself to private enforcement, and therefore this factor weighs heavily in favor of implying a cause of action.

As to the third factor, implying a cause of action will supplement existing enforcement of the statute because of the provision for 15% interest.[81] The fourth factor, the significance of the purpose of the provision, weighs in favor of implying

---

[80] *See* Alaska Stat. § 21.36.495.

[81] *See Peter*, 22 P.3d at 489.

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 22 of 25

a private cause of action.  The law seeks to ensure that health care insurers pay providers in a timely manner and, if the health care insurer denies payment or needs additional information, the law requires "notice to the covered person, or to the provider of the medical care services or supplies if the claim was assigned or if the covered person elected direct payment."[82]  This seeks to ensure that providers receive prompt notice if a claim has been denied or is at risk of denial. With respect to factors five and six, the extent of change in tort law and burden on the courts, the Court does not foresee a large change nor would implying a cause of action be particularly burdensome, and so these factors weigh in favor of implying a private cause of action.  In sum, the Court finds that the factors weigh in favor of implying a private cause of action to enforce the Prompt Pay Rule.[83]

The Court therefore grants Moda's Partial Motion to Dismiss as to Counterclaim 7 and denies Moda's Partial Motion to Dismiss as to Counterclaim 8.

## VI.  Futility of Amendment

Finally, Moda contends that were the Court to dismiss any of New Life's counterclaims, dismissal should be without leave to amend because amendment

---

[82] Alaska Stat. § 21.36.495(b).

[83] *See Zipperer v. Premera Blue Cross Blue Shield of Alaska,* Case No. 3:15-cv-00208-JWS, 2016 WL 4411490, at *3 (D. Alaska Aug. 16, 2016) (finding that plaintiff stated a claim for a violation of the Prompt Pay Statute but without considering whether to infer private cause of action).

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 23 of 25

Case 3:23-cv-00132-SLG     Document 43     Filed 02/05/25     Page 23 of 25

would be futile.[84]  As explained above, the Court finds that New Life has plausibly alleged all of its counterclaims, except as to New Life's reliance on violations of the UCSPA as evidence in support of Counterclaim 4, the Breach of Duty of Good Faith and Fair Dealing claim, and as to a private cause of action in Counterclaim 7, the 80th Percentile Rule.

Leave to amend should be "freely give[n] . . . when justice so requires."[85] "Under futility analysis, '[d]ismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment.'"[86]  The Court found that New Life had pled insufficient facts in support of its assertion that Moda violated the UCSPA.  Amendment could rectify that deficiency and therefore the Court grants leave to amend as to Counterclaim 4.  However, amendment of Counterclaim 7 would be futile as the Court has found that the Alaska Legislature did not intend to create a private cause of action in the 80th Percentile Rule.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Moda Health Plan Inc.'s Partial Motion to Dismiss New Life Treatment Center's Counterclaims at Docket 39 is

---

[84] Docket 42 at 20-21.

[85] Fed. R. Civ. P. 15(a)(2).

[86] *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (emphasis and alteration in original) (quoting *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010)).

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 24 of 25
Case 3:23-cv-00132-SLG     Document 43     Filed 02/05/25     Page 24 of 25

DENIED in part and GRANTED in part as follows:  The motion is GRANTED as to Counterclaim 4, with respect to New Life's allegations that Moda's purported violations of the UCSPA constitute evidence of bad faith.  New Life may file amended counterclaims within 14 days of this order to address this deficiency or file a notice that New Life is not pursuing this theory in Counterclaim 4.  The motion is also GRANTED as to Counterclaim 7, without leave to amend; Counterclaim 7 is DISMISSED with prejudice.  Moda's partial motion to dismiss at Docket 39 is DENIED in all other respects.

Further, the stay in this case is LIFTED.[87]  The parties shall meet and confer within 30 calendar days of this order to jointly complete a scheduling and planning report.  Counsel for Moda shall serve and file the parties' report with the Court within seven calendar days of the meet and confer.

DATED this 4th day of February 2025, at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[87] *See* Docket 40.

Case No. 3:23-cv-00132-SLG, *Moda Health Plan, Inc. v. New Life Treatment Center*
Order on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaims
Page 25 of 25

Case 3:23-cv-00132-SLG    Document 43    Filed 02/05/25    Page 25 of 25